**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**VALERIO ALEXANDER,**

                                 **CASE NO. 2:16-CV-585**
    **Petitioner,**                      **CRIM. NO. 2:13-CR-106(1)**
                                 **CHIEF JUDGE EDMUND A. SARGUS, JR.**
    **v.**                             **Chief Magistrate Judge Elizabeth P. Deavers**

**UNITED STATES OF AMERICA,**

    **Respondent.**

**ORDER and**
**REPORT AND RECOMMENDATION**

Petitioner, a federal prisoner, brings this *Motion to Vacate under 28 U.S.C. § 2255.* (ECF No. 150.) On May 17, 2017, Petitioner filed an unopposed *Motion for Leave to File Amended § 2255 Petition.* (ECF No. 154.) Petitioner's unopposed motion to file an amended § 2255 petition (ECF No. 154) hereby is **GRANTED**.

This matter is before the Court on the motion to vacate pursuant to 28 U.S.C. § 2255, as amended, Respondent's *Answer in Opposition*, Petitioner's *Reply,* and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that Petitioner's Amended Motion to Vacate Under 28 U.S.C. § 2255 be **DENIED** and this action be **DISMISSED.**

**Facts and Procedural History**

The United States Court of Appeals for the Sixth Circuit summarized the facts and procedural history of this case as follows:

> In early 2013, defendant made a deal with Thomasina Howard whereby he would provide Howard and her 16–year–old daughter (the victim) with food, housing, and illegal drugs in exchange for their services as sex workers at his apartment in Columbus, Ohio. Defendant photographed the victim in lingerie and provided her with a cellular telephone. Defendant forwarded the photographs of the victim to another woman, and instructed her to create an advertisement for the victim in the escorts section of

Backpage.com, a nationwide website headquartered in Texas with servers in Arizona. The advertisement contained the photographs of the victim and a telephone number for the cellular telephone defendant gave her. Around February 8, 2013, the victim received a call from a prospective client, and defendant instructed her to meet with the client, with whom the victim engaged in sexual activity in exchange for $100. The victim later left defendant's apartment despite his attempts to convince her to remain there as a sex worker. A federal task force officer received information that the victim had been used in sex trafficking, and arrested defendant. At the time of arrest, defendant had a cellular telephone in his car which contained photographs of the victim used in the Backpage.com advertisement, as well as numerous text messages related to sex trafficking.

The grand jury returned a two-count indictment charging defendant with conspiracy to recruit a minor for commercial sex and the substantive offense. Defendant's first appointed attorney, Nathan Akamine, withdrew at defendant's request shortly before the trial date, citing a breakdown of the attorney-client relationship. The District Court pushed trial back two months to allow second appointed attorney James Gilbert to prepare for trial. Days before trial, defendant sought to fire Gilbert, even though he was prepared to go to trial, because defendant "neither wanted to go to trial nor accept a plea." Defendant then sought and received permission to substitute retained counsel. Retained counsel Javier Armengau informed the District Court that he would represent defendant only if granted a continuance. The United States opposed the continuance, citing Armengau's own pending criminal trial in February 2014. The District Court agreed to delay the trial to January 21, 2014, and indicated that it would grant no further continuances. Nevertheless, Armengau moved for a continuance on December 30, noting that he received the file from defendant's prior counsel on December 13 and would not be prepared for trial due to the delay. The District Court denied the motion. On January 15, Armengau again moved for a continuance, indicating that the file sent by prior counsel was incomplete, and that he only received the complete file on the date of his immediate motion. The District Court again denied the motion.

Three days before trial, defendant signed a plea agreement wherein he pleaded guilty to one count of Sex Trafficking of Children, and the United States dismissed the conspiracy count and agreed to a sentence of 15 years' imprisonment. The District Court engaged defendant in a plea colloquy, and the investigating officer testified to a factual basis for the plea. Defendant indicated that portions of

the officer's testimony were incorrect; namely, that he had nothing to do with posting the advertisement on Backpage.com, and that he did not provide a cellular telephone to the victim. Defendant stated, "I'll take the guilty plea because I have no way of proving, I guess, anything and not enough time to do so either way it goes." The District Court and United States agreed that the plea could not go forward, as defendant denied facts essential to the interstate commerce element of 18 U.S.C. § 1591. The court then called a recess during which defendant and Armengau conferred. Upon returning to court defendant then admitted to directing another person to place the Backpage.com advertisement, admitted providing a cellular telephone to the victim, and entered a guilty plea, acceptance of which the District Court held in abeyance pending review of the presentence investigation report.

On February 12, 2014, however, defendant moved to withdraw his plea on the ground that he was innocent of the charge. At a hearing on the motion, Armengau argued that the District Court should allow plea withdrawal because defendant initially pleaded not guilty, wavered in agreeing to the factual basis during his plea colloquy, and told his probation officer that he was innocent. Armengau then moved to withdraw as defense counsel. Defendant stated that he did not object to Armengau's withdrawal, and noted that Armengau "said that the prosecution denied him from the rights of speaking to the victim and that he had received the discovery packets for my case on Monday, December 16th, which didn't allow him any time to do anything."

The District Court granted Armengau's motion to withdraw and appointed substitute counsel Steven Nolder, with whom defendant had a potential conflict of interest which he waived. Two days before his scheduled sentencing, defendant informed the District Court that he was now unwilling to waive the conflict, and was appointed his fifth and current attorney, Keith Yeazel.

Defendant again moved to withdraw his guilty plea, stating in an affidavit that he pleaded guilty because he "believed that Mr. Armengau was not prepared to go to trial" and that "Mr. Armengau did not have enough time to review the evidence." At a hearing on the motion, defendant testified that Armengau told him he would hire a private investigator, question witnesses, and obtain telephone records, but did none of these things. Defendant also testified that he was unaware that Armengau was facing criminal charges at the time he retained him. According to defendant, after the District Court denied his January 15 motion to continue, Armengau advised him that "looking at the fact that he didn't have

3

any time to work, ... the best thing that I could do was basically sign that deal or go to court and because the fact that things wasn't [sic] looking right or something, ... that I could be facing 30 to life." Defendant testified that he accepted the plea agreement "[b]ecause Mr. Armengau was saying that he felt like that was the best thing for me, that he felt like I would lose in trial, and he didn't have to say too much more." Defendant also testified that Armengau agreed to provide him a letter stating that he did not have enough time to prepare for the trial and that the prosecutor had denied him access to witnesses, but refused to write the letter after defendant complained to the Columbus Bar Association. Defendant maintained his innocence, stating that he never made a deal with Howard or the victim related to sex trafficking. The District Court expressed concern with Armengau's handling of the case, but ultimately denied defendant's motion to withdraw his plea. Consistent with the plea agreement, the District Court sentenced defendant to 15 years in prison.

*United States v. Alexander,* 628 F. App'x 422, 423-24 (6th Cir. 2015). On October 14, 2015, the Sixth Circuit affirmed the *Judgment* of this Court, denying Petitioner's claim that his attorney suffered an improper conflict of interest based on pending criminal charges, and declining to address Petitioner's remaining claims of ineffective assistance of counsel. *Id.*

On June 23, 2016, Petitioner filed the *Motion to Vacate under 28 U.S.C. § 2255.* On May 17, 2017, through counsel, he filed an *Amended Motion to Vacate and Set Aside Conviction and Sentence under 28 U.S.C. § 2255.* (ECF No. 154-1.) Petitioner asserts that his conviction for sex trafficking of children, in violation of 18 U.S.C. § 1591(a), (b)(2), categorically fails to qualify as a "crime of violence" and that the Court therefore improperly sentenced him as a career offender in view of *Mathis v. United States,* -- U.S. --, 136 S.Ct. 2243 (2016); that his conviction fails to qualify as a "crime of violence" because it does not meet the definition of the force clause contained in U.S.S.G. § 4B1.2(a)(1), as required under *Johnson v. United States*, 559 U.S. 133, 140 (2010); and that his guilty plea and conviction was the product of the ineffective assistance of counsel. However, Petitioner has withdrawn his claim that his sentence

violates *Johnson v. United States*, -- U.S. --, 135 S.Ct. 2551 (2015) (declaring the "residual clause" of the Armed Career Criminal Act "ACCA" to be constitutionally invalid), in view of the *Beckles v. United States,* -- U.S. --, 137 S.Ct. 886 (2017) (holding that the advisory Sentencing Guidelines are not subject to vagueness challenges under the Due Process Clause). *See Reply to Response to Motion* (ECF No. 159, PageID# 935.) It is the position of the Respondent that Petitioner's claims are waived, time-barred, or without merit.

## Standard of Review

In order to obtain relief under 28 U.S.C. § 2255, a petitioner must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck*, 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States or when the trial court lacked jurisdiction, when the sentence was in excess of the maximum sentence allowed by law, or when the judgment or conviction is "otherwise subject to collateral attack." *United States v. Jalili,* 925 F.2d 889, 893 (6th Cir. 1991). In the absence of constitutional error, the question is "whether the claimed error was a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States,* 368 U.S. 424, 428–429 (1962)); *see also Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2006). However, " '[a] § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exception circumstances.'" *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (quoting *United States v. Brown*, 62 F.3d 1418 (6th Cir. 1995) (unpublished)). Further, if a petitioner fails to raise a non-constitutional claim at trial or on direct appeal, he or she has waived the matters for collateral review except where the errors amount to

something akin to a denial of due process.  Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained on a motion to vacate under § 2255 unless the petitioner shows: (1) cause and actual prejudice sufficient to excuse his failure to raise the claims previously; or (2) that he is "actually innocent" of the crime.  *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013)(citing *Bousley v. United States,* 523 U.S. 614, 622 (1998)) (internal citations omitted).

## Ineffective Assistance of Counsel

Petitioner asserts that he was denied the effective assistance of counsel, because his attorney, Javier Armengau, failed to disclose that he faced pending felony charges, failed to investigate or prepare the case for trial, and acted in an abrasive and unprofessional manner regarding his fees, thereby forcing Petitioner to enter a guilty plea.  Petitioner specifically complains that his attorney neglected to interview key witnesses, hire an investigator, review Petitioner's cell phone records, or timely obtain discovery material.  (ECF No. 154-1, PageID# 879-80; 938)  Petitioner also asserts that Armengau suffered a conflict of interest in view of the pending criminal charges against him.  (PageID# 885-86.)

The United States Court of Appeals for the Sixth Circuit has rejected this latter claim as follows:

> Defendant [] argues that Armengau's pending criminal trial posed a conflict of interest because it preoccupied Armengau's time, energy, and money, causing him to "sacrifice the interests of his client...." *United States v. DeFalco*, 644 F.2d 132, 139 (3d Cir. 1979). Where counsel actively represents conflicting interests, and such representation adversely affects counsel's performance, prejudice is presumed. *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052. In *DeFalco,* counsel was under indictment by the same prosecutor and before the same judge as the defendant he represented. *DeFalco*, 644 F.2d at 137. This raised the concern that the "inherent emotional and psychological barriers" of advocating against the prosecutor with whom he was negotiating his own plea

bargain "created an impermissible potential of preventing ... counsel from competing vigorously with the government" on behalf of his client. *Id*. at 136.

Here, however, Armengau was indicted by a state prosecutor before a state judge, and defendant's charges were in federal court. Accordingly, there was no potential that Armengau's pending trial presented a *per se* conflict with his representation of defendant such that he sacrificed defendant's interests to further his own. *See Taylor v. United States*, 985 F.2d 844, 846 (6th Cir. 1993) (*per curiam*) (no conflict where the defendant and his counsel were "indicted for separate crimes by two different authorities").

*United States v. Alexander,* 628 F. App'x at 425-26. This Court therefore will not now again address this same issue here. That said, the Sixth Circuit declined to address Petitioner's remaining claims of the denial of effective assistance of counsel, as well as his claim that Armengau had a conflict of interest based on his fixation on obtaining fees to pay for the costs of his upcoming criminal trial.[1] This Court therefore will address those issues here.

---

[1] The Sixth Circuit declined to address Petitioner's remaining claims of ineffective assistance of counsel:

Defendant also argues that the costs of Armengau's pending trial created an overwhelming interest in payment of his fees that caused Armengau to breach his duty of loyalty. Though financial pressures may create a conflict of interest, *see Winkler v. Keane*, 7 F.3d 304, 307–310 (2d Cir. 1993) (analyzing whether a contingent fee arrangement created a conflict of interest), defendant cites no authority finding a conflict of interest in an analogous situation, and the only evidence of Armengau's fixation on fees is found in letters written after defendant's guilty plea. The record is insufficient to address this issue on direct appeal.

Defendant next asserts that Armengau's representation was deficient because he failed to adequately investigate the case or prepare for trial in a timely manner. A defense attorney has a duty to investigate a client's case, which includes "the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Avery v. Prelesnik*, 548 F.3d 434, 437 (6th Cir. 2008), *cert. denied*, 558 U.S. 932, 130 S.Ct. 80, 175 L.Ed.2d 234 (2009) (quoting *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005)). Defendant faults Armengau for his failure to obtain the case file from prior counsel until nearly six weeks after entering an appearance as counsel, and argues that he provided deficient representation by failing to interview crucial witnesses, obtain telephone records, or hire a private investigator.

Absent further development of the record, there is insufficient evidence to address these claims. Although defendant expressed concerns with Armengau's representation during a hearing on his second plea withdrawal motion,

Petitioner claims that Armengau suffered a conflict of interest and performed in a constitutionally unreasonable manner by failing to investigate or prepare for trial due to Armengau's "extreme fixation on his fees" and preoccupation with obtaining funds to pay for the cost of his upcoming trial on felony charges. *See Amended Motion to Vacate and Set Aside Conviction and Sentence under 28 U.S.C. § 2255* (ECF No. 154-1, PageID# 888.) Petitioner states that he therefore felt he had no choice but to enter a guilty plea, although he wanted to proceed to trial and has repeatedly so indicated and proclaimed his innocence. (PageID# 892-95.) Petitioner refers to the *Declaration* he attached in support of *Defendant's Second Motion to*

---

defendant's statements "do not provide material necessary to review [his] claims." *United States v. Williams*, 753 F.3d 626, 637 (6th Cir. 2014). For example, the record does not "provide any information about why [defendant's] various lawyers chose to take the actions they took," *id.*, aside from defendant's self-serving statements that he believed Armengau did not have enough time to review the evidence or prepare for trial, and that Armengau told him "he didn't have any time to work...." Nor does the record reveal the witnesses Armengau allegedly failed to investigate, what testimony they would have offered if called, or how obtaining telephone records would have assisted the defense. *See United States v. Stuckey*, 253 Fed.Appx. 468, 492 (6th Cir.2007) (declining to address ineffective assistance claim based on failure to call witnesses where record did not indicate testimony witnesses would have provided). With regard to a private investigator, when defendant criticized attorney James Gilbert for his failure to hire one, he offered no answer to the District Court's question about how it would have helped his defense.

As a result, "the record contains insufficient information for us to determine whether [Armengau] pursued a reasonable trial strategy" in declining to investigate witnesses, obtain telephone records, or hire a private investigator. *United States v. Crowe*, 291 F.3d 884, 886 (6th Cir.2002) (citing *United States v. Earle*, 156 F.3d 1232, at *3 (6th Cir.1998) ("The record is not adequate for review on direct appeal if facts about the impugned attorney's decision-making process and strategy must be determined to resolve the claims of inadequate representation.")). We note that the record does, however, show that defendant repeatedly delayed proceedings below by demanding new counsel on four occasions. Defendant provided vague reasons for these demands, and most of his attorneys reluctantly withdrew out of frustration with the breakdown of their attorney-client relationship. Without an evidentiary hearing, "it is simply not possible for us to properly determine whether [Armengau] provided [defendant] constitutionally ineffective representation." *Williams*, 753 F.3d at 637. In light of the insufficiency of the record on this point, we decline to address the merits of defendant's claim on direct appeal.

*United States v. Alexander,* 628 F. App'x at 426-27.

*Withdraw Guilty Plea* (ECF No. 122-1, PageID# 454-56) in support, as well as two letters dated February 14, 2014, and February 27, 2014, in which Armengau recommended that Petitioner retain new counsel in view of his non-payment of fees. (Doc. 122-3, PageID# 488-91.)

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was deficient, or that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment, and that this deficient performance prejudiced the petitioner. *Id*. at 687. This showing requires that defense counsel's errors were so serious as to deprive the defendant of a fair and reliable trial. *Id*.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). Given the difficulties inherent in determining whether an attorney's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Strickland,* 466 U.S. at 689. Nevertheless, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. Therefore, a petitioner must also establish prejudice in order to prevail on a claim of ineffective assistance of counsel. *Id*. at 692.

In order to establish prejudice, a petitioner must demonstrate that a reasonable probability exists that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because a petitioner must satisfy both prongs of *Strickland* in order to

demonstrate ineffective assistance of counsel, should a court determine that the petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

Additionally, because a criminal defendant waives numerous constitutional rights when he pleads guilty, the guilty plea must be entered knowingly and voluntarily in order to be constitutionally valid. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). "'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir. 1988) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In applying this standard, a court must look at the totality of the circumstances surrounding the plea. *Id.* A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). Further, a criminal defendant cannot successfully challenge the voluntariness of his plea merely on the basis that he was motivated to plead guilty. *Brady v. United States*, 397 U.S. 742, 750 (1970).

However, a petitioner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). *Strickland's* two part test applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988). In order to obtain relief on that basis, however, a petitioner raising such a claim must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill*, 474 U.S. at 59; *Sparks*, 852 F.2d at 884.

> The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show

> that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill,* 474 U.S. at 59; *Sparks,* 852 F.2d at 884. Petitioner has failed to meet this standard here.

On April 25, 2013, the grand jury returned an *Indictment* charging Petitioner with conspiracy to commit sex trafficking of a child, and sex trafficking of a child, in violation of 18 U.S.C. § 1591, and 18 U.S.C. § 1594. (ECF No. 1.) On May 6, 2013, the Court appointed Attorney Nathan Akamine to represent Petitioner. (ECF No. 10.) On June 27, 2013, Petitioner filed a request for the appointment of new counsel based on a "complete breakdown of the attorney-client relationship," as he did not believe that his attorney was "on his side." (ECF No. 37, PageID# 136.) On July 10, 2013, the Court granted Petitioner's request, continued the trial date from July 15, 2013, to September 23, 2013, and appointed Attorney James Gilbert to represent the Petitioner. (ECF Nos. 45, 46, 47.) On August 30, 2013, at the request of the defense, the Court again continued the trial date to November 18, 2013. (ECF No. 59.) On November 14, 2013, Javier Armengau filed a notice of appearance indicating that he had been retained as defense counsel. At that time, Attorney Gilbert indicated that his relationship with Petitioner had been contentious. *Transcript* (ECF No. 124, PageID# 523.) "[W]e are not on the same page. . . . [W]e are probably not in the same book." (*Id.*) "[H]e believes I am forcing him into trial." (*Id.*) The Court therefore granted Petitioner's request for a continuance of the trial date until January 21, 2014. (ECF Nos. 71, 72, 74.) On December 30, the defense filed a motion for a continuance of the trial date, due to a delay in obtaining discovery. (ECF No. 77.) Armengau indicated that he had not received the file until December 13, 2013, although he had contacted prior counsel on several occasions. (ECF No. 77, PageID# 231-33; *Transcript,* ECF No. 138.) On January 6, 2014, the Court denied the motion for a continuance, in part based on

the government's representation that the discovery material was neither voluminous nor complex, and there remained more than two weeks before the scheduled trial date. *See Transcript* (ECF No. 138; ECF No. 79.)[2] On January 15, 2014, defense counsel filed a second motion to continue the trial date, in view of the lack of receipt of certain discovery items. (ECF No. 84, PageID# 241.) At a telephone conference on the continuance request, Armengau indicated that he had filed the motion because he did not know if he had received all of the discoverable material, particularly on "out-of-state" connections to advertisements or material on cell phone tower analysis. *Transcript* (ECF No. 140, PageID# 670-71.) "I don't even know if these things exist or not[.]" (PageID# 671.) The government, however, represented that all of the discovery material had been provided to the defense as of December 13, 2013. The Court conducted an in camera review to verify that there remained no non-disclosed discovery material, and the second motion for a continuance was terminated from the docket as moot. (PageID# 672, 675-76.)

Thereafter, on January 18, 2014, Petitioner signed a *Plea Agreement* indicating he agreed to plead guilty to Count Two of the *Indictment,* which charged him with sex trafficking of

---

[2] Defense counsel stated:

> I did speak with Mr. Gilbert. . . . he was in the process of getting me the files immediately. I did call him again, and it was going to be delivered to me shortly. The reason that I followed up with e-mails was because I was getting concerned that we weren't getting the file.

> I did contact Ms. Hill. It is true both – Mr. Gilbert offered to meet with me, but I was advised by his office that he was out until December 16, and we hadn't had the file yet. Ms. Hill's offer to me was great, and I appreciate that, but I hadn't had the file to review yet. . . .

> I'm very, very well aware the Court indicated there would be no other continuances, but when the Court asked how much time we would need. . . . assuming that we were going to get the file immediately, we anticipated that the January date would be fine. But, again, the file wasn't given to us for almost a month later. And the only reason why we got it that quick is because I did contact Ms. Hill to let her know that I needed the government to provide me with another copy. She called Mr. Gilbert's office, and then they hurried up and got us the file.

Transcript (ECF No. 138, PageID# 647.)

children.  He understood that he faced a mandatory minimum term of not less than ten years and a maximum of life imprisonment.  (ECF No. 87, PageID# 248.)  The parties agreed to a sentence of 180 months.  Petitioner also agreed not to contest the forfeiture of certain facilitating cellular telephones.  The government would not file any additional charges against Petitioner based on the activities charged in the *Indictment*.  (PageID# 249-50.)  Petitioner also explicitly waived his right to appeal his sentence pursuant to the terms of his Plea Agreement or  "to challenge the sentence collaterally through a post-conviction proceeding, including a proceeding under 28 U.S.C. § 2255."  (PageID# 250.)  He did retain his right to appeal his sentence if the United States appealed the sentence, or if the Court imposed a sentence above the statutory maximum. He also retained the right to challenge his sentence based on a claim of the denial of the effective assistance of counsel or prosecutorial misconduct.  (PageID# 250-51.)  On January 21, 2014, at his guilty plea hearing, Petitioner expressed his intent to enter a guilty plea.  He stated that he had discussed the change of plea and possible defenses to the charges with his attorney. *Transcript* (ECF No. 95, PageID# 268.)  Petitioner denied being under the influence of narcotics or alcohol.  (PageID# 270.)  He had told his attorney everything he knew about the case, and believed that counsel had all of the information needed upon which to provide proper legal advice.    (PageID# 270-71.)    Petitioner  expressed  his  satisfaction  with  the  advice  and representation of counsel.  (PageID# 271.)  The Court advised Petitioner of the elements of the offense charged.    Petitioner  indicated  that  he  understood.    (PageID# 217-72.)    Petitioner understood that he had agreed to a sentence of fifteen years.  (PageID# 272.)  He had discussed with his attorney how the sentencing guidelines would apply.  He understood that he faced a mandatory minimum term of ten years and up to life incarceration.  (PageID# 274-75.)  The Court reviewed all of the rights that Petitioner was waiving by entry of his guilty plea.  Petitioner

at all times indicated that he understood. (PageID# 275-76.) The prosecutor summarized the terms of Petitioner's *Plea Agreement*. Petitioner agreed with those terms. (PageID# 276-79.) Petitioner understood that he was waiving his right to appeal all claims but the denial of the effective assistance of counsel and prosecutorial misconduct. (PageID# 280-81.) Task Force Agent Aaron Dennis summarized the facts as follows:

> On March 15, 2013, ICE/HIS Task Force Agent Aaron Dennis received information that a 16-year-old child had been the victim of sex trafficking. TFO Dennis interviewed the child, Jane Doe #1, and conducted an investigation based on that interview. During the course of the interview and the investigation, TFO Dennis learned the following facts.
>
> Jane Doe #1 resided with Thomasina Howard at a residence in Columbus, Ohio from approximately January 3, 2013 to February of 2013. In late January or early February, Howard met with Valerio Alexander for the purpose of exchanging sex for drugs. During the meeting, they discussed Jane Doe #1. Alexander suggested that he could assist Howard and Jane Doe #1 by providing them food, shelter and drugs, in exchange for Howard and Jane Doe #1 engaging in prostitution for Alexander's financial benefit.
>
> Howard thereafter discussed Alexander's suggestion with Jane Doe #1. As a result of this conversation, Jane Doe #1 agreed to meet with Alexander. Howard contacted Alexander and he arrived at their apartment in Columbus, Ohio a short time later.
>
> Alexander drove Jane Doe #1 and Howard along with a female named Chardanay to an apartment located at 5892 Chatford Drive, Apartment D, in Columbus, Ohio. While at this apartment, Alexander provided Howard, Jane Doe #1 and Chardanay with illegal drugs. He also provided Jane Doe #1 with a cellular phone. Alexander then took photographs of Howard and Jane Doe #1 with his cellular phone. The photographs of Howard were completely clothed, while Jane Doe #1 was wearing pink zebra lingerie in the photos. Some of the photographs of Jane Doe #1 were taken in the back bedroom of the apartment while Jane Doe #1 was in different poses on the bed.
>
> After taking photographs of both Howard and Jane Doe #1, Alexander transferred them to Chardanay, and directed Chardanay

to use the pictures to create advertisements for prostitution in the escorts section of the website Backpage.com. Backpage.com is a nationwide website headquartered in Texas, with servers located in Arizona.

At Alexander's instruction, Chardanay created two Backpage.com advertisements. One advertisement was for Howard, and the other advertisement contained photos of Jane Doe #1 and Chardanay. Jane Doe #1's name in the ad was "India." The advertisement contained phone numbers for Chardanay and Jane Doe #1. The phone number for Jane Doe #1 was for the phone that Alexander had provided to her.

Sometime between late February 8 and the morning of February 9, 2013, Alexander took Jane Doe #1 into the spare bedroom of the apartment and instructed her that they needed to stay in the bedroom because Chardanay had a "date." He further explained that the master bedroom was where girls had "dates," and that whenever a girl had a date, everyone else in the house was to stay in the spare bedroom. Alexander further instructed Jane Doe #1 regarding how much she should charge for "dates" and told her to listen to Chardanay to learn how she should talk to clients who would be calling her on the cell phone that she had been given. Jane Doe #1 eventually realized that she was expected to have sex with people for money.

On or about February 8, 2013, and February 9, 2013, Jane Doe #1 received a call for a "date" and was instructed by Alexander to stay at the apartment and meet with this client/john. Alexander also told Jane Doe #1 that there were condoms on the dresser and marijuana in the drawer to calm her nerves. Jane Doe #1 followed Alexander's instructions and engaged in sexual activity with the john/client in exchange for $100, in the Chatford Drive apartment.

Subsequent to engaging in the "date" as instructed, Jane Doe #1 contacted a friend to pick her up. Jane Doe #1 left the Chatford Drive apartment and returned to the apartment where she had been staying with Howard. Alexander contacted Jane Doe #1 at the apartment during the following days, and on one occasion attempted to convince her to again engage in commercial sexual activity.

Subsequent to learning the above information, TFO Dennis was able to locate Alexander. Alexander was arrested on or about March 8, 2013, and two cell phones were seized from his vehicle. Alexander admitted that the cell phones were his. Forensic

> analysis of one of the cell phones revealed that numerous photos of Howard and Jane Doe #1 were present on the phone. Included in the photos on the phone were the photographs that were used in the advertisements for Howard and Jane Doe #1 on Backpage. The phone also contained numerous text messages relating to prostitution and posting ads on Backpage.com.

(PageID# 282-84.) Petitioner initially denied posting or being involved with the posting of advertisements on Backpage, and using or giving a cellular telephone to Jane Doe #1. (PageID# 286.) The prosecutor indicated that the government had evidence that would be presented at a trial indicating that Petitioner "was instrumental in the posting of that Backpage.com ad." (PageID# 286.) Armengau indicated that he had reviewed with Petitioner the evidence against him, and "what the testimony at trial would be regarding the transmission and the taking of the photographs and the cell phone usage, and how the evidence was recovered by the agents as well and the timing of it." (PageID# 287.) The Court advised Petitioner that it would not accept the guilty plea if he could not admit these facts, which established his guilt of the offense charged. After a recess during which Petitioner consulted with his attorney, Petitioner stated that he had provided Jane Doe #1 with a cellular telephone and had at least directed someone to place an ad on the website Backpage.com. (PageID# PageID# 287-289.) Petitioner also agreed with all of the facts provided by the task force officer. He admitted his guilt of the charge against him. (*Id*.)

Petitioner's subsequent protestation of innocence and claim that he did not want to enter a guilty plea but felt forced to do so, in view of this record, is unworthy of credit.

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Despite Petitioner's argument to the contrary, nothing in the record supports his claim that defense counsel or anyone else coerced his guilty plea, or that his attorney failed to prepare for trial. The record indicates that counsel reviewed the discovery material and discussed with Petitioner the evidence against him. Petitioner acknowledged his guilt and expressed satisfaction with his attorney. Prior trial continuances had resulted from Petitioner's dissatisfaction with his prior court-appointed counsel. Armengau requested two continuances of trial in order to obtain or review discovery material; however, the record does not, as Petitioner suggests, indicate that this was a result of counsel's failure to prepare, inattention to the case or inadequate performance. Moreover, the record does not indicate that any further investigation, preparation, or the hiring of an investigator or review of cell phone records would have assisted the defense. The record does not indicate that defense counsel could have obtained any exculpatory evidence for the defense, or that Jane Doe #1 would have exonerated him of the charges. Thus, the record establishes that the prosecutor would have been able to prove the offenses charged.

Likewise, the record does not support Petitioner's claim that, but for the unreasonable performance of his attorney, he would have proceeded to trial. Petitioner had a recommended sentence under the United States Sentencing Guidelines of 360 months to life imprisonment. By entry of his guilty plea, Petitioner substantially reduced his potential prison exposure, obtaining an agreed upon sentence of 180 months incarceration, well below his recommended sentence under the advisory United States Sentencing Guidelines. The letters to which Petitioner refers in support of his complaint that defense counsel was more concerned with obtaining fees than with preparing the defense both were written in February 2014, after Petitioner entered his guilty plea. Additionally, shortly thereafter, on March 18, 2014, Armengau filed a *Motion to Withdraw*.

(ECF No. 102.) On May 16, 2014, the Court granted the motion. (ECF No. 113.) After the appointment of new counsel on Petitioner's behalf, on November 4, 2014, Petitioner filed a *Second Motion to Withdraw Plea of Guilty*. (ECF No. 122.) After a hearing, on December 11, 2014, the Court nonetheless denied the motion. (ECF Nos. 128, 129.) Therefore, Petitioner cannot establish prejudice from counsel's concern with the non-payment of fees after the time of Petitioner's entry of his guilty plea.

As discussed, Petitioner alleges Armengau "was scrambling for money to pay his own counsel, and prepare for his own upcoming trial" and that "Armengau's personal problems interfered with" his obligation to provide prepare the case for trial and investigate the case, constituting an "active conflict of interest." (ECF No. 159, PageID# 938.) Again, however, such allegations are entirely without support.

A criminal defendant has a Sixth Amendment right to conflict-free representation. *Gillard v. Mitchell*, 445 F.3d 883, 890 (6th Cir. 2006) (citing *Smith v. Anderson*, 689 F.2d 59, 62-63 (6th Cir. 1982)). "The Sixth Amendment's right to counsel includes a 'correlative right to representation that is free from conflicts of interest.'" *United States v. Kilpatrick*, 798 F.3d 365, 374 (6th Cir. 2015) (citing *Wood v. Georgia*, 450 U.S. 261, 271 (1981)). "A conflict of interest arises 'when the defense attorney . . . [is] required to make a choice advancing his own interests to the detriment of his client's interests." *Blackwell v. United States*, 2009 WL 6315322, at *49 (S.D. Ohio Sept. 22, 2009) (quoting *Daniels v. United States*, 54 F.3d 290, 294 (7th Cir. 1995) (citing *United States v. Horton*, 845 F.2d 1414, 1419 (7th Cir. 1988)). A claim that counsel labored under a conflict of interest is at base a claim governed by *Strickland*. *Ahmed v. Houk*, No. 2:07-cv-658, 2014 WL 2709765, at *25 (S.D. Ohio June 16, 2014) (citing *Brooks v. Bobby*, 660 F.3d 959, 963-64 (6th Cir. 2011)). To obtain relief, a petitioner must establish that his

18

attorney "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005) (citations omitted). In certain contexts, prejudice may be presumed where counsel labored under an actual conflict of interest. *See Cuyler v. Sullivan*, 446 U.S. 335, 349 (1980); *Holloway v. Arkansas*, 435 U.S. 475, 487–91 (1978). However, the presumption of prejudice applies only where the conflict arises from an attorney's representation of multiple concurrent or co-defendants in the same or separate proceedings. *See Ahmed v. Houk*, 2014 WL 2709765, at *25 (citing *Mickens v. Taylor*, 535 U.S. 162, 174–76 (2002); *Satterwhite v. Texas*, 486 U.S. 249, 256–58 (1988); *Jalowiec v. Bradshaw*, 657 F.3d 293, 314–15 (6th Cir. 2011), *McElrath v. Simpson,* 595 F.3d 624, 630–31 (6th Cir. 2010); *Stewart v. Wolfenbarger*, 468 F.3d 338, 350–54 (6th Cir. 2006); *Gillard v. Mitchell*, 445 F.3d 883, 890–91 (6th Cir. 2006); *Whiting v. Burt,* 395 F.3d 602, 617–20 (6th Cir. 2005); *McFarland v. Yukins*, 356 F.3d 688, 705–09 (6th Cir. 2004); *Moss v. United States*, 323 F.3d 445, 460–61 (6th Cir. 2003); *Smith v. Hofbauer*, 312 F.3d 809, 814–16 (6th Cir. 2002)).

That said, "[t]he argument is not frivolous that a defense lawyer within the sights of a targeted criminal prosecution may find his personal interests at odds with his duty to a client." *Reyes-Vejerano v. United States*, 276 F.3d 94, 99 (1st Cir. 2002).

> A lawyer in these circumstance[s], while dealing on behalf of his client with the office that is prosecuting him personally may, consciously or otherwise, seek the goodwill of the office for his own benefit. A lawyer's attempt to seek the goodwill of the prosecutor may not always be in the best interest of the lawyer's client.

*Armienti v. United States*, 234 F.3d 820, 825 (2nd Cir. 2000). "It is well-established that a conflict of interest may arise where defense counsel is subject to a criminal investigation." *Moss v. United States,* 323 F.3d 445, 472 (6th Cir. 2003) (citing *Taylor v. United States*, 985 F.2d 844,

846 (6th Cir. 1993) (no actual conflict of interest where defense counsel faced state charges and defendant faced federal charges). *See also United States v. Gonzales*, No. 5:08-cr-250, 2013 WL 6191363, at *3 (N.D. Ohio Nov. 26, 2013) ("A conflict of interest will exist if the client and his attorney are being investigated and prosecuted by the same office.") (citing *Taylor*, 985 F.2d at 844). However, the Petitioner must establish that an "actual conflict of interest that adversely affected his defense." *Chester v. Horn*, 2013 WL 2256218, at *4 (E.D. Penn. May 22, 2013); *see also United States v. Beasley*, 27 F.Supp.3d 793, 818-19 (E.D. Mich. June 12, 2014) (citing *Moss*, 323 F.3d at 471-73) (conflict of interest claim fails where the petitioner cannot demonstrate any adverse effect or prejudice as a result of the alleged conflict). In other words, he must "demonstrate that there was an adverse impact, which had a probable negative effect on his case." *Chester v. Horn*, 2013 WL 2256218, at *4. "In doing so, Petitioner must show actual actions, or inactions, that counsel took or failed to take" based on counsel's alleged fixation on obtaining fees for his upcoming criminal trial in lieu of providing constitutionally adequate assistance. *Id.* He must point to specific instances in the record that suggest an actual conflict or impairment of interests, and demonstrate that defense counsel chose between plausible alternative courses of action or failed to undertake an action harmful to the Petitioner as a result of defense counsel's other interest or loyalties. *See United States v. Clark*, Nos. 05-cr-80810, 14-cv-10183, 2017 WL 1044702, at *8 (E.D. Mich. Feb. 21, 2017) (citing *McElrath v. Simpson*, 595 F.3d 624, 631 (6th Cir. 2010) (quoting *United States v. Hall*, 200 F.3d 962, 965-66 (6th Cir. 2000)); *United States v. Stotts*, Nos. CV. 01-1001, CR. 96-10015, 2002 WL 1477214, at *13 (W.D. Tenn. July 2, 2002) (citing *United States v. Soldevila-Lopez*, 17 F.3d 480, 486 (1st Cir. 1994)). As discussed, Petitioner has failed to meet this burden here.

Referring to *State v. White*, No. 14AP-160, 2015 WL 9393518, at *2-3 (Ohio App. 10th Dist. Dec. 22, 2015) (concluding that nothing in the record supported the claim of Armengau's conflict of interest based on his upcoming criminal trial), Petitioner argues in support of his claim of a conflict of interest that other criminal defendants have raised similar allegations against Armengau in other cases. *Amended Motion to Vacate and Set Aside Conviction and Sentence under 28 U.S.C. § 2255* (ECF No. 154-1, PageID# 887.) Petitioner also refers to the *Motion for Immediate Interim Remedial Suspension* filed against Armengau by the Columbus Bar Association, and the allegations made therein. (ECF No. 122-2, PageID# 457-84.) Petitioner states that the Ohio Board of Commissioners of the Lawyers Fund for Client protection has reimbursed a former client of Mr. Armengau due to Armengau's failure to provide adequate services during this same timeframe. (PageID# 887.) However, the fact that Armengau ultimately was convicted and disbarred, or that complaints have been made against him does not establish any prejudice or constitutionally ineffective performance in this case. As discussed, the Court granted Armengau's motion to withdraw and appointed new counsel to represent Petitioner at the hearing on his second motion to withdraw his guilty plea and at sentencing.

Moreover, "[a] fee dispute does not, *per se*, create an actual conflict of interest." *United States v. Viola*, No. 1:08-cr-506, 2011 WL 6749643, at *7 (N.D. Ohio Dec. 22, 2011) (citing *Spencer v. Pratt,* No. 08-12327, 2009 WL 4884972, *15 (E.D. Mich. 2009)). "Although a 'defendant's failure to pay fees may cause some divisiveness between attorney and client,' courts generally presume that counsel will subordinate his or her pecuniary interests and honor his or her professional responsibility to a client." *Kelly v. McKee*, No. 08-13777, 2016 WL 1258967, at *8 (E.D. Mich. March 31, 2016) (citing *United States v. Taylor*, 139 F.3d 924, 932 (D.C. Cir.

1998) (citing *United States v. O'Neil,* 118 F.3d 65, 71 (2nd Cir. 1997); *United States v. Jeffers,* 520 F.2d 1256, 1265 (7th Cir. 1975) (Stevens, J.)).

> Consequently, to the extent that pecuniary interests lead an attorney to shirk his or her ethical obligation to provide dutiful representation, the client's Sixth Amendment claim is evaluated according to the stricter standard enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). O'Neil, 118 F.3d at 72; *see Taylor*, 139 F.3d at 932; *see also Bonin v. Calderon,* 59 F.3d 815, 827 (9th Cir.1995) (holding that lawyer's pecuniary interests may "create a theoretical conflict of interest, [but] do not typically create actual conflicts under *Cuyler*"), cert. denied, 516 U.S. 1051, 116 S.Ct. 718, 133 L.Ed.2d 671 (1996); cf. *Beets v. Scott,* 65 F.3d 1258, 1271 (5th Cir.1995) ("*Strickland* best addresses attorney self-interest conflicts."), cert. denied, 517 U.S. 1157, 116 S.Ct. 1547, 134 L.Ed.2d 650 (1996).

*United States v. Zhadanov*, No. 93-240-3, 1998 WL 633698 (E.D. Pa. August 11, 1998); *see also Familia-Consoro v. United States,* 160 F.3d 761, 766 (1st Cir. 1998) (citations omitted).

In short, Petitioner's summary allegation that his attorney placed his own financial interest above his representation of the Petitioner is without record support. The record fails to establish that Petitioner was prejudiced, based on Armengau's alleged preoccupation with raising money to fund his own criminal defense, as that term is defined under *Strickland*, 466 U.S. at 694.

Petitioner has failed to establish the denial of the effective assistance of counsel.

### Sentencing Claims

Petitioner challenges the imposition of his sentence as a career offender. As discussed, Petitioner waived his right to collaterally challenge his sentence pursuant to the terms of his negotiated *Plea Agreement*. (ECF No. 87, PageID# 250-51.)

> COURT: [D]o you understand that for all practical purposes, you are giving up your right to appeal the conviction and the sentence in this case? Do you understand that?

22

***

> . . . There are two – three exceptions.  One would be if your lawyer was Constitutionally ineffective, which is, I would tell you, is unlikely.  And the other is just as unlikely, and that would have to do with prosecutorial misconduct in this case.  Those two could still be matters of appeal.  But there are other matters that are not subject to this agreement that you'll be waiving as a right to appeal.  Do you understand that?
>
> DEFENDANT:  Yes, Your Honor.
>
> (Privileged discussion between counsel for the defendant and the defendant)
>
> COURT:   Mr. Armengau, are you satisfied that the defendant understands what we've just talked about?
>
> MR. ARMENGAU:  Yes, Your Honor.  And just so the Court is aware as well, obviously when I went down to see him and review the plea agreement, we have addressed all of these issues in probably more detail than we're doing so here today.   So I'm comfortable he has a good understanding of it. . . .
>
> ***
>
> COURT:  So [] then – If I accept [the joint recommendation of 180 months], that's where your right to appeal is severely limited by this agreement.  Do you understand that?
>
> DEFENDANT:  Yes, Your Honor.

*Guilty Plea Transcript* (ECF No. 95, PageID# 280-81.)   Therefore, Petitioner has waived his right to challenge his sentence in these proceedings.   "It is well settled that a defendant in a criminal case may waive 'any right, even a constitutional right,' by means of a plea agreement[,]" *United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001) (quoting *United States v. Ashe,* 47 F.3d 770, 775-76 (6th Cir. 1995)), including the right to collaterally attack a sentence under 28 U.S.C. § 2255."   *United States v. Fisher*, Nos. 3:13-CR-000158-GNS-DW,

3:16-CV-00337-GNS, 2017 WL 2681662, at *3 (W.D. Ky. June 21, 2017) (citing *Davila v. United States*, 258 F.3d 448, 450 (6th Cir. 2001)).

Petitioner maintains that this Court should not enforce this waiver, because it resulted from the denial of the effective assistance of counsel. For the reasons already discussed, however, the Court is not so persuaded.

Referring to *United States v. McBride,* 826 F.3d 293, 295 (6th Cir. 2016), Petitioner also argues that he could not have waived a claim under *Johnson*[3] or *Mathis* because the Supreme Court decided these cases after his sentencing hearing. The Sixth Circuit held in *McBride* that the defendant that "could not have intentionally relinquished a claim based on *Johnson*, which was decided after his sentencing" by agreeing with a career-offender designation in a plea agreement and sentencing memorandum, as "a defendant can abandon only 'known right[s].'" *Id.* (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)). However, McBride is not applicable here.

Here, and unlike the scenario in *McBride*, Petitioner signed a *Plea Agreement* explicitly waiving his right challenge his sentence on appeal and in § 2255 proceedings. As discussed, the record reflects that he knowingly, intelligently, and voluntarily waived his right to challenge his sentence. McBride, however, did not sign a plea agreement waiving his appellate and collateral-review rights. *See Bright v. United States*, Nos. 3:11-CR-141-TWP-CCS-1, 3:16-CV-281-TWP, 2017 WL 177628, at *3 (E.D. Tenn. Jan. 17, 2017) (citing *In re Garner*, 664 Fed.Appx. 441 (6th Cir. 2016) (distinguishing *McBride* from the scenario in this case). Moreover,

> [i]t is well settled. . . that a change in law cannot render a plea agreement unknowing. *See Brady v. United States*, 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *United States v. Bradley*, 400 F.3d 459, 463 (6th Cir. 2005) ("[W]here

---

[3] As discussed, Petitioner has withdrawn his claim that his sentence violates *Johnson*, 135 S.Ct. at 2551, and the Court therefore will not address this issue further.

developments in the law later expand a right that a defendant has waived in a plea agreement, the change in law does not suddenly make the plea involuntary or unknowing or otherwise undo its binding nature."). This rule reflects the sound judgment that a plea agreement, like any other contract, allocates risk. *Bradley*, 400 F.3d at 464. By waiving the right to appeal, a defendant assumes the risk that a shift in the legal landscape may engender buyer's remorse. *Id.*; *see also United States v. Morgan*, 406 F.3d 135, 137 (2d Cir. 2005) ("The possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements.").

Accordingly, courts will enforce appeal waivers even when a legal development makes it likely that the defendant would receive a lower sentence were the defendant resentenced under the new law, and even when the legal change affects constitutional rights. For example, when the Sentencing Commission lowered the base offense levels for many drug offenses in 2008 and 2014, defendants who waived their right to appeal could not benefit from the change. *See, e.g., United States v. Ellison*, No. 16–5085, 664 Fed.Appx. 507, 509–10, 2016 WL 6818855, at *2 (6th Cir. Nov. 18, 2016) (*per curiam); United States v. Marquez*, 570 Fed.Appx. 816, 818–19 (10th Cir. 2014) (*per curiam*); *United States v. Polly*, 630 F.3d 991, 1002 (10th Cir. 2011). Similarly, after the Supreme Court voided for vagueness the "residual clause" in the ACCA's definition of "violent felony," *see Johnson v. United States*, ––– U.S. ––––, 135 S.Ct. 2551, 2557, 192 L.Ed.2d 569 (2015), courts routinely enforced the appeal waivers of prisoners who stood to benefit. *See, e.g., Sanford v. United States*, 841 F.3d 578, 579–80 (2d Cir. 2016) (*per curiam*); *In re Garner*, No. 16–1655, 664 Fed.Appx. 441, 443–44, 2016 WL 6471761, at *2 (6th Cir. Nov. 2, 2016); *United States v. Hurtado*, No. 16–2021, 667 Fed.Appx. 291, 292–93, 2016 WL 3410270, at *1 (10th Cir. June 17, 2016) (*per curiam*); *United States v. Bey*, 825 F.3d 75, 83 (1st Cir. 2016); *United States v. Blackwell,* 651 Fed.Appx. 8, 10 (2d Cir. 2016) (per curiam); *United States v. Ford*, 641 Fed.Appx. 650, 651 (8th Cir. 2016) (*per curiam*).

*United States v. Morrison*, 852 F.3d 488, 490-91 (6th Cir. 2017) (distinguishing *McBride* where the defendant signed a plea agreement waiving his right to appeal any sentence within the recommended guideline range). Although Petitioner may now regret the decision, his "lack of clairvoyance" cannot undo it. *Id*. (citing *In re Garner*)). Further, the Sixth Circuit "has

consistently held § 2255 or appeal waivers with plain language that precludes *Johnson-* or *Mathis*-based claims are enforceable even if those waivers were entered into years before *Johnson* and *Mathis* were decided." *Cox v. United States*, No. 16-5485, 695 F. App'x 851, 853 (6th Cir. June 1, 2017) (citations omitted). "Although [Petitioner] may not have known at the time of his plea that the Supreme Court would change the law in the way it did in [*Mathis*], he knew at the time of his plea that § 2255 afforded him an avenue to subsequently challenge his sentence as unlawful and knowingly chose to waive his right to seek § 2255 relief except on the basis of ineffective assistance of counsel or prosecutorial misconduct." *Id.* Therefore the waiver in his *Plea Agreement* is enforceable and bars Petitioner's challenge to his sentence in these proceedings.

Notably, the record also reflects that any error would be harmless. "If the record shows that the district court would have imposed its sentence regardless of the Guidelines range, then an error in calculating the Guidelines range is harmless." *Morrison,* 852 F.3d at 491 (citing *Molina–Martinez v. United States*, ⸻ U.S. ⸻, 136 S.Ct. 1338, 1346 (2016). As discussed, the Court imposed a term of 180 months imprisonment, a sentence which was well below Petitioner's recommended guideline sentence, pursuant to the agreement of the parties. Petitioner's *Plea Agreement* does not reference the United States Sentencing Guidelines, and his designation as a career offender had no effect on the Court's imposition of sentence. *See United States v. McNeese*, 819 F.3d 922, 927-28 (6th Cir. 2016) ("[T]he only cases in which we have found a Rule 11(c)(1)(C) sentence to be 'based on' a Guidelines sentencing range have been those in which the plea agreement explicitly referenced a such a range.") (citations omitted). Petitioner acknowledges that, even without the career offender enhancement, his recommended sentence under the United States Sentencing Guidelines would have been the same. *Amended*

*Motion to Vacate and Set Aside Conviction and Sentence under 28 U.S.C. § 2255* (ECF No. 154-1 PageID# 874-75); *see PreSentence Investigation Report*, ¶¶ 39-42.[4]

## Recommended Disposition

Therefore, for all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that Petitioner's Amended Motion to Vacate Under 28 U.S.C. § 2255 be **DENIED** and this action be **DISMISSED**.

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[4] Petitioner's recommended guideline sentence was calculated under the provision for sex trafficking in Chapter 2 rather than the career offender provision of Chapter Four, because the calculation from Chapter 2 was more onerous. *PreSentence Investigation Report*, ¶ 42.

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED**.

<u>*s/ Elizabeth A. Preston Deavers*</u>
Elizabeth A. Preston Deavers
Chief United States Magistrate Judge